**In re Petition of Len B. BLACK-WELL, for the ESTATE OF I.G. SERVICES, LTD., Debtor.**

**Len B. Blackwell, as the Joint Official Liquidator of I.G. Services, Ltd., and Chapter 11 Trustee for I.G. Services, Ltd., Plaintiff,**

**v.**

**Deloitte & Touche, LLP, Defendant.**

**Bankruptcy No. 99–53170–C. Adversary No. 02–5061–C.**

United States Bankruptcy Court, W.D. Texas, San Antonio Division.

June 27, 2002.

Patrick J. Neligan, Jr., Weil, Gotshal & Manges, Neligan Andrews Bryson Foley LLP, Dallas, TX, for debtor.

Patrick J. Neligan, Neligan Andrews Bryson Foley LLP, Dallas, TX, for joint admin. debtor.

Douglas J. Buncher, Neligan Andrews Bryson Foley LLP, Dallas, TX, for trustee.

William T. Reid, IV, Diamond McCarthy Taylor & Finley LLP, Austin, TX, for plaintiff.

Gavin Robert Villareal, Robb L. Voyles, Austin, TX, for defendant.

### ORDER REGARDING JURY DEMAND AND STATEMENT REGARDING CONSENT

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for consideration the foregoing matter. On May 29, 2002, the defendant filed its jury demand and also indicated that it did not consent to this court's conduct of a jury trial or to the entry of a final judgment in this case. Plaintiff concedes that the jury demand is well-founded, but asks the court to "delay" ruling on the jury demand until such time as it has ruled on the pending motion of the defendant to dismiss this case.

The court agrees with both parties that the defendant's jury demand is well-founded. The court also agrees with the defendant that there is no reason to delay ruling on the jury demand (to the extent that a ruling is even necessary). *See* FED. R.CIV.P. 39(a) ("when trial by jury has been demanded ... the action shall be designated upon the docket as a jury action"). The court disagrees with the defendant that this court is thereby divested of the judicial power to consider the pending motion to dismiss, however.

### I.    EFFECT OF FAILURE TO TIMELY SEEK WITHDRAWAL OF THE REFERENCE ON PARTY'S JURY DEMAND

Once a jury has been demanded, and once at least one of the parties refuses to consent to the conduct of the jury trial by the bankruptcy court, the bankruptcy court can no longer conduct the trial of the matter *unless* neither party timely seeks to withdraw the reference. This is so because the bankruptcy court cannot unilaterally transfer the matter to the district court. Instead, the district court must affirmatively act to withdraw the reference. *See* 28 U.S.C. § 157(d). If, however, no one asks the district court to act, the district court is unlikely even to be aware of the existence of the matter, much less to actually withdraw the reference. Both the statute and the rules contemplate the party who desires (and needs) withdrawal to affirmatively seek it by motion *to the district court. See id.; see also* FED.

R.Bankr.P. 5011. If neither party timely takes this additional step (the essential last step to assure that one gets the jury trial they desire before the tribunal they prefer), then that failure can only be construed as a waiver of the party's right to a jury trial.

Rule 38 confirms that the constitutionally protected right to a jury trial is in fact waivable by inaction on the part of a litigant. *See* Fed.R.Civ.P. 38(d). In bankruptcy cases, due to the structure of the bankruptcy court, additional steps are required to perfect the jury demand. The failure to complete these steps in the bankruptcy context ought to be construed in precisely the same fashion as the failure to file the requisite pleading contemplated by Rule 38 in an ordinary civil trial context. Rule 9015 of the Bankruptcy Rules is unfortunately silent on this issue, but no other construction is possible. The failure to seek a withdrawal of the reference, for example, leaves the case pending before the bankruptcy judge. When a jury demand is made, consent is not given, and no party seeks to withdraw the reference, the bankruptcy court is left with only two options at law: first, it could dismiss the case on grounds that it lacks the judicial power to conduct the trial; second, it could try the case without a jury on grounds that the party who refuses to allow the bankruptcy judge to conduct the trial, but who also fails to take the necessary steps to place the matter before the district judge, has of necessity waived its right to have a jury trial. The first choice is unacceptable, because a dismissal might well deprive the plaintiff of an alternative forum for proceeding with the action if the statute of limitations has, in the meantime, run.[1] It also permits a litigant to benefit from their *lack* of diligence, and affirmatively *discourages* parties from pursuing the very course plotted out by Congress in section 157, namely, to impose on the parties the duty to seek withdrawal of the reference when a case should not (or cannot) be tried by the bankruptcy court.

The second choice, by contrast, is consistent with the way waiver in the litigation context normally works. When a party has a duty to take certain steps in the course of litigation, and fails to take those steps, waiver is a common presumed consequence of that failure. We have already noted that a party's failing to file a jury demand within the time specified in Rule 38 constitutes a waiver of the right to have a jury trial. A failure to timely respond to requests for admissions will result in the party's being deemed to have admitted everything requested—a *de facto* waiver of the right to contest the allegations. *See* Fed.R.Civ.P. 36(a). A failure to timely raise evidentiary objections at trial constitutes a waiver of the right to later challenge the admission of evidence on appeal. *See C.P. Interests, Inc. v. California Pools, Inc.,* 238 F.3d 690, 696–97 (5th Cir.2001). A failure to put on evidence in support of an affirmative defense is typically treated as a waiver of that defense (as is a failure to plead that defense). *See U.S. v. Thibodeaux,* 211 F.3d 910, 912 (5th Cir.2000). A party's failure to follow through with the relatively simple procedural steps required to assure that party that they will have their day in court before a jury of their peers ought similarly to be treated as a waiver of that right. In this way, the party with the duty to act is the party who suffers the adverse consequences for failing to act. The other approach (dismissal)

---

1. Limitations are normally tolled for a brief period of time when a given case is dismissed for lack of subject matter jurisdiction. However, the dismissal option here described would result not from a lack of subject matter jurisdiction, but from a lack of judicial power. It is less certain that tolling would apply in this context.

achieves exactly the opposite, undesirable result—the party with the duty to act is rewarded for failing to act.

II. WHETHER A BANKRUPTCY COURT CAN CONSIDER OR RULE ON A DISPOSITIVE MOTION IN A NON-CORE PROCEEDING WITHOUT BOTH PARTIES' EXPRESS CONSENT

■ It is well-settled that, until such time as the district court withdraws the reference, a given matter in a bankruptcy case remains before the bankruptcy judge to whom the case has been assigned. The jury demand does not change this fact in the least. Indeed, all that a jury demand assures is that the case will, at the appropriate time, be *tried* to a jury. Many a party never makes it to trial, never has the opportunity to present their facts to a jury of their peers, because the matter is disposed of on its legal merits, without there ever being a contestable issue of fact. A matter might, for example, be one for which there is no legal remedy as a matter of law. *See* FED.R.CIV.P. 12(b)(6). Or there may be no contested issues of material fact, such that the matter can be disposed of as a matter of law by summary judgment. FED.R.CIV.P. 56. In such cases, the right to a trial by jury never arises because the case never goes to trial at all. Thus, even if a jury has been demanded in such cases, that right is not abridged by the entry of a final order which, say, grants a motion to dismiss or grants summary judgment. So long as the matter is pending before the bankruptcy court, then, that court may rule on dispositive motions presented to it without contravening any party's jury entitlements— and without contravening any party's right to have a jury trial before the district court as provided in 28 U.S.C. § 157(e).

■ A separate question is presented by a party's refusal to consent to the bankruptcy court's hearing and determining, and entering appropriate orders and judg-

ments with respect to noncore matters. *See* 28 U.S.C. § 157(c). The defendant here contends that that section prevents this court even from considering dispositive motions filed pursuant to Rule 12 or Rule 56, much less ruling on such motions. The statute's language lends credible support to this contention. The statute provides that, absent consent as provided in subsection (c)(2),

> [a] bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such a proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1); *see also Celotex Corp. v. Edwards,* 514 U.S. 300, 115 S.Ct. 1493, 1500 n. 7, 131 L.Ed.2d 403 (1995) (finding that an injunction issued in a noncore proceeding did not violate this section because the injunction was interlocutory and so not final, within the meaning of this section).

Section 157(c)(1) was enacted in reaction to the Supreme Court's decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), in which the Court struck down as unconstitutional the 1978 Bankruptcy Reform Act's allocation of judicial power to the bankruptcy courts. *See In re Apex Express Corp.,* 190 F.3d 624, 631 (4th Cir.1999). In the Bankruptcy Amendments and Federal Judges Act of 1984, Congress purported to vest original bankruptcy jurisdiction in the district court, which could then refer all bankruptcy matters to the adjunct bankruptcy

courts, subject to the right to withdraw that reference in whole or in part, on its own motion or on motion of a party in interest.[2] Core matters can be heard and decided by the bankruptcy judges, subject only to appellate review that is indistinguishable from the appellate review that is given to district court decisions by the courts of appeal. *See* 28 U.S.C. §§ 157(b), 158(d) (district court has jurisdiction to hear appeals "from final judgments, orders, and decrees"); *see also Matter of U.S. Abatement Corp.,* 79 F.3d 393, 397–98 (5th Cir.1996) (legal conclusions are reviewed *de novo* on appeal). Non-core matters, of the sort that gave rise to *Marathon,* can be heard by the bankruptcy court, but the statute itself says that only the district court can enter "final judgments and orders," absent consent of the parties. *See* 28 U.S.C. § 157(c)(1).

The statute is silent, however, regarding just what the expression "final order or judgment" contemplates. Does this expression refer only to the ultimate ruling to be rendered after an evidentiary hearing, or does it also encompass rulings on dispositive motions, which implicate only legal conclusions and rulings? The standard of review for appellate review of legal conclusions and the district court's review of the legal conclusions incorporated in a bankruptcy judge's report and recommendation after trial of a non-core matter is the same—*de novo* review. Indeed, it is *exactly* the same, because, in the latter case, the district court's *de novo* review is limited to "those matters to which [a] party has timely and specifically objected," the selfsame scope of review as applies when appellate review is sought. This parallelism suggests that a reading of section 157(c)(1) that requires a report and recommendation to the district judge even on at-law rulings on dispositive motions (such as motions to dismiss and motions for summary judgment) may elevate form over substance and introduce an unnecessary extra layer of paperwork that only adds delay.

We may gain some guidance by comparing section 157(c)(1) with section 636(b)(1) of title 28, which describes the powers of magistrate judges with regard to referred civil matters. The statutes, while similar, are not precisely the same. The magistrate statute states that

(A) A [district] judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, ... to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.

(B) a [district] judge may also designate a magistrate to conduct hearings ... and to submit to a judge of the court proposed findings of fact and recommendations for disposition ... of any motion excepted in subparagraph (A) ...

28 U.S.C. § 636(b)(1). There is no similar express bar to the bankruptcy judge's hearing dispositive motions. In addition, bankruptcy judges can enter final orders without question on so-called "core" matters, subject only to ordinary appellate review, a power not accorded magistrate judges. The difference suggests a broader grant of judicial power on reference to bankruptcy judges than to magistrate judges, one that could easily permit direct rulings by the bankruptcy judge on dispositive motions in non-core proceedings. Congress certainly could have tracked the

---

**2.** The 1984 Act continued the procedure of separate bankruptcy court and clerk offices, where all matters would be originally filed so long as a general order of reference was in place. *See* FED.R.BANKR.P. 5005.

language it had used in section 636(b)(1), but did not, suggesting that Congress did not intend to so closely proscribe the powers of the bankruptcy court. In addition, the essential nature of review of a bankruptcy court's legal conclusions in a core matter and a bankruptcy court's at-law ruling on dispositive motions in a non-core matter is precisely the same: *de novo* review of the bankruptcy judge's legal conclusions. *Compare Matter of U.S. Abatement Corp.,* 79 F.3d 393, 397–98 (5th Cir. 1996) (bankruptcy judge's conclusions of law are reviewed on appeal *de novo*) *with* 28 U.S.C. § 157(c)(1) (conclusions rendered on non-core matters are reviewed *de novo,* to the extent of timely and specific objections). Dispositive motions do not involve factual findings, of course—especially dispositive motions under Rule 12(b)—so the scope of review on dispositive motions is the same as is the scope of ordinary appellate review of *any* legal conclusion rendered by a bankruptcy judge in a core proceeding.

Congress, it seems, was most concerned that a differing standard of review by applied when the bankruptcy court made *factual* findings, as opposed to legal conclusions, for that is the only circumstance in which a differing standard ever *would* be used. The operative sentence in subsection (c)(1) says that "[i]n such proceedings, the bankruptcy judge shall submit *proposed findings of fact* and conclusions of law to the district court, *and* any final order or judgment shall be entered by the district judge, after considering the bankruptcy judge's *proposed findings* and conclusions *and* after review *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1) (emphasis added).

Reasonable persons could certainly read the subclause referring to the entry of final orders and judgments in isolation and conclude that bankruptcy judges cannot enter dispositive rulings on motions to dismiss or for summary judgment. *See, e.g., In re Apex Express Corp., supra* at 633. Yet there is no essential difference between the review accorded at-law findings in non-core proceedings, and the at-law findings in core proceedings: "Because this was a motion for summary judgment and we have before us all of the facts developed below, rather than remanding to the district court so that it can conduct a *de novo* factual analysis, we undertake that *de novo* analysis in the first instance." *See id.* Indeed, there *are no factual findings* on a motion for summary judgment. *See Reyes v. City of Richmond, Texas,* 287 F.3d 346, 350 (5th Cir.2002) (the determination that there are no genuine issues of material fact on summary judgment is a *legal* conclusion, not a factual one).

A more wholistic and rational reading of the sentence in section 157(c)(1) suggests that the final judgment or order to which the statute refers is the ruling that emerges from an *evidentiary* hearing, and that Congress had in mind the preparation of a report and recommendation only upon the conclusion of a final *evidentiary* hearing or trial. That is the context in which a differing standard of review arises (*de novo* versus "clearly erroneous"). That also makes sense of the remainder of the statute, which applies *de novo* review not to the entirety of the bankruptcy judge's recommendation but only to "those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1). If no one objects, then the district court does *not* engage in *de novo* review. There is nothing left for the district court to do—unless one believes that Congress at this critical juncture believed it essential to the constitutionality of the bankruptcy court structure to require the district court to perform the ministerial act of signing a separate piece of paper. Given that the

ministerial act contains no element of "supervision," one is hard-pressed to imagine just how it could take on constitutional proportions. *See Gomez v. U.S.*, 490 U.S. 858, 109 S.Ct. 2237, 2247, 104 L.Ed.2d 923 (1989).

Yet, despite the utter lack of necessity for this ministerial act, the appellate structure of the bankruptcy court system seems to afford little alternative. Section 158(a) gives appellate jurisdiction to the district court only with respect to those final judgments, orders and decrees which have been referred to the bankruptcy judge under section 157. As we have already seen, section 157(c)(1) is itself a severe limitation on the scope of that reference. It seems clear that Congress thought that, with respect to whatever final rulings were rendered in non-core proceedings, the first level of *appellate* review would occur at the circuit level. The structure of section 157(c)(1) may not make much practical sense, but there seems to be no room for district court appellate review of bankruptcy court final rulings on dispositive motions. Meanwhile, there is easy direct review by the circuit court of final decisions of the district court, of which a district court ruling on a dispositive motion would be one example. *See* 28 U.S.C. § 1291. Sensible or no, the statute seems to require that the district court enter the order on dispositive motions in non-core proceedings.

Neither of these alternatives demands that the *consideration* of dispositive motions be passed on to the district court however, as the defendant has suggested. Indeed, even under the magistrate statute, magistrate judges consider dispositive motions and submit reports to the district judge. 28 U.S.C. § 636(b)(1)(B). So long as the reference remains with the bankruptcy judge, then, motions to dismiss and other dispositive motions should and will

be considered by this court. As and when the court reaches a conclusion with respect to such motions, it will prepare a report and recommendation for submission to the district court, requesting entry of a final order thereon, and affording the parties the opportunity to timely and specifically object, as provided in section 157(c)(1).

So ORDERED.